**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Protective Life Insurance Company, a Tennessee corporation,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Peter J. Mizioch, an Arizona resident; The Estate of Phyllis A. Mizioch; Jimmy Ray Montoya, an Arizona resident; Mark Casey Montoya, an Arizona resident; Russel Lynn Montoya, an Arizona resident,<br><br>　　　　　　Defendants. | No. CV 10-1728-PHX-JAT<br><br>**ORDER** |

Pending before this Court is Plaintiff Protective Life Insurance Company's ("Protective Life") Motion for Default Judgment (Doc. 49), Motion to Deposit Funds With the Court (Doc. 31), and Interpleader Defendants Mark Casey Montoya's and Russell Lynn Montoya's Motion to Remand to State Court (Doc. 60).  The Court now rules on the Motions.

**I.    BACKGROUND.**

This case arises from a dispute among potential beneficiaries to a $1,000,000 life insurance policy.  Protective Life issued an insurance policy for the life of Phyllis Mizioch (the "Decedent") on December 28, 1999.  The Decedent's then husband, P.J. Mizioch, applied for the policy and was named primary beneficiary.  In the event that P.J.

Mizioch is unable to collect on the policy, the Decedent's three children from a prior marriage - J.R. Montoya, M.C. Montoya, and R.L. Montoya - become the beneficiaries.

The Decedent died on July 6, 2010. According to her Certificate of Death, the Decedent's death was caused by "gunshot wounds of the head, neck, and torso"; the manner of her death was homicide. (Doc. 1, Ex. A).

Protective Life claims P.J. Mizioch is a "person of interest" and "potential suspect" in the Decedent's murder. (Doc. 1 at pp.3-5). P.J. Mizioch denies this claim. (Doc. 54 at pp.4-5). If Mizioch is found to be responsible for the Decedent's death, Arizona's "slayer statute" prevents him from collecting on the insurance policy, and Protective Life would distribute the funds to the Decedent's children. ARIZ. REV. STAT. ANN. § 14-2803(A) and (B)(1). Thus, a question exists as to whether Protective Life faces competing claims to the death benefit proceeds. On August 13, 2010, to shield itself from liability accompanying potential multiple and conflicting claims, Protective Life filed a Complaint in Interpleader, requesting that this Court determine the rightful beneficiary(ies) of the Decedent's life insurance policy. (Doc. 1). In connection with its Complaint in Interpleader, on November 15, 2010, Protective Life filed a Motion to Deposit Disputed Funds With the Court. (Doc. 31).

Additionally, on December 8, 2010, Protective Life filed a Motion for Default Judgment as to J.R. Montoya. J.R. Montoya was served with Protective Life's Complaint in Interpleader and Summons on September 15, 2010 (Doc. 14) and failed to file an answer or otherwise respond. The Clerk of Court filed an Entry of Default as to J.R. Montoya pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. 25).

On December 24, 2010, M.C. Montoya and R.L. Montoya filed a Petition for Remand, requesting that this Court remand the matter to state court in the event that Protective Life, the only diverse party, is removed as a party to this action.

**II.    MOTION FOR DEFAULT JUDGMENT.**

Protective Life filed a Motion for Default Judgment as to Interpleader Defendant Jimmy Ray Montoya. (Doc. 49). Protective Life requests that this Court preclude Jimmy

- 2 -

1 Ray Montoya from asserting any interest in the death benefit proceeds due under the
2 Decedent's life insurance policy and bind him to any determination that this Court makes
3 regarding the Decedent's life insurance policy. (*Id.*).  For the reasons set forth below, the
4 Court grants Protective Life's Motion for Default Judgment as to Jimmy Ray Montoya.

5 Once the Clerk of Court has entered default, the plaintiff may apply for entry of
6 default judgment. *See* Fed. R. Civ. P. 55(b).  When the Court considers the entry of
7 default judgment, the well-pleaded "factual allegations of the complaint, except those
8 relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*,
9 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944));
10 *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

11 Jimmy Ray Montoya was served with the Complaint on September 15, 2010 (Doc.
12 14).  Jimmy Ray Montoya has not answered or otherwise responded in this case.  The
13 Clerk of Court entered default against Jimmy Ray Montoya on November 4, 2010.  (Doc.
14 25).  Protective Life filed a properly supported Motion for Default Judgment on
15 December 8, 2010.  (Doc. 49).  Because the clerk has entered default and based on
16 Protective Life's properly supported Motion, the Court will grant the Motion for Default
17 Judgment.  The Clerk shall enter a judgment against Jimmy Ray Montoya that he is not
18 entitled to received any of the proceeds from Protective Life Policy No. PL0675396 on
19 the life of Phyllis Mizioch.

20 **III.   MOTION TO DEPOSIT DISPUTED FUNDS WITH COURT.**

21 In connection with its Complaint in Interpleader (Doc. 1), Protective Life filed a
22 Motion to Deposit Disputed Funds With the Court.  (Doc. 31).  Protective Life requests
23 leave to deposit with the Clerk of Court the $1,000,000 plus accrued interest due the
24 Decedent's beneficiary(ies) as determined by the Court.  (*Id.*).  Protective Life further
25 requests that it be discharged from any further obligation to any of the Defendants with
26 respect to the payment of proceeds due under the Decedent's life insurance policy.  (*Id.*).
27 For the reasons set forth below, the Court grants Protective Life's Motion to Deposit
28 Disputed Funds With the Court.

### *A. Legal Standard.*

"Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1); *see State of Texas v. State of Florida*, 306 U.S. 398, 412 (1939) (declaring that "the relief sought [in an interpleader action] is the avoidance of the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing. These risks are avoided by adjudication in a single litigation binding on the parties."); *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982). A third party payor, or stakeholder, should not be forced to risk guessing at which claimant is entitled to collect payable proceeds. *John Hancock Mut. Life Ins. Co. V. Kraft*, 200 F.2d 952, 953 (2d. Cir. 1953) (internal citations omitted) ("The stakeholder should not be obliged at its peril to determine which of two claimants has the better claim."). If the relief sought in an action includes money, a party - with leave of court and on notice to all other parties - may deposit the funds with the court. Fed. R. Civ. P. 67(a); *see also* WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2991 (2d ed. 1997) ("The purpose of the deposit is to relieve the depositor of responsibility for a fund in dispute. It is useful in cases of interpleader.").

### *B. Analysis and Conclusion.*

Protective Life argues that, as a disinterested third party that is subject to the Defendants' competing and conflicting claims, it is susceptible to double or multiple liability. (Doc. 31 at p.5). Protective Life alleges that Defendant P.J. Mizioch is a "person of interest" in the murder of the Decedent. (*Id.*). Arizona's "slayer statute" prohibits one "who feloniously and intentionally kills the decedent" from obtaining any benefits from the decedent's estate, including the proceeds of any applicable life insurance policy. ARIZ. REV. STAT. ANN.§§ 14-2803(A) and (B)(1)(a). Given these circumstances, Protective Life argues that, to avoid potentially running up against Arizona's slayer statute, the proper course is for it to file an interpleader action - as it has done - and to deposit the policy's proceeds with the court. (Doc. 31 at p.5).

1  M.C. Montoya and R.L. Montoya submitted Claimant Statements, confirming their
2 claims to the benefit proceeds stemming from the Decedent's life insurance policy and
3 basing their claims on A.R.S. § 14-2803(A), which may disqualify P.J. Mizioch from his
4 position as primary beneficiary. (Doc. 31 at p.4).  Furthermore, in their answer to
5 Protective Life's Complaint in Interpleader, M.C. and R.L. Montoya again acknowledged
6 their claim to the death benefit proceeds due under the Decedent's policy. (*Id.*).  M.C.
7 Montoya and R.L. Montoya also filed a motion in the probate action of the Decedent's
8 estate, seeking to disqualify P.J. Mizioch as the personal representative of the estate,
9 partly due to P.J. Mizioch's status as a suspect in the Decedent's murder.  (*Id.*)

10  In Protective Life's view, P.J. Mizioch's status as a "person of interest" in the
11 investigation into the Decedent's murder, as it relates to A.R.S. § 14-2803(A), prevents
12 the insurance company from dispersing funds to P.J. Mizioch.  Additionally, according to
13 Protective Life, the claim filed by P.J. Mizioch on one side and the claim filed by M.C.
14 Montoya and R.L. Montoya on the other, evidences adverse and competing claims to the
15 death benefits that Protective Life is obligated to pay the beneficiary of the Decedent's
16 life insurance policy.

17  P.J. Mizioch argues that his is the only claim to the death benefit proceeds and
18 Protective Life is, therefore, not exposed to liability from multiple claims.  (Doc. 54 at
19 p.2).  P.J. Mizioch contends that he did not play any role in the Decedent's death and
20 A.R.S. § 14-2803, therefore, is not applicable.  (*Id*. at pp.4-5).  He further contends that if
21 A.R.S. § 14-2803 is applicable, then M.C. Montoya and R.L. Montoya failed to provide
22 Protective Life with proper notice of their claim in accordance with A.R.S. § 14-2803(G)
23 and (H).  (*Id*. at pp.7-8).  According to P.J. Mizioch, his remains the only existing claim.
24 (*Id.*).

25  The Court must determine whether the facts at bar evidence competing, adverse
26 claims that may expose Protective Life to double or multiple liability.  If Protective Life
27 potentially faces exposure to such liability, it is reasonable for this Court to accept deposit
28 of the disputed funds and to determine the rightful beneficiary(ies) to the Decedent's

- 5 -

1 estate. *See* Fed. R. Civ. P. 22(a)(1) and 67(a).

### 1. A.R.S. § 14-2803 (Arizona's Slayer Statute).

Arizona's slayer statute does not require a conviction to render a beneficiary ineligible to collect death benefit proceeds. The statute provides:

> **In the absence of a conviction**, the court, on the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the person would be found criminally accountable for the felonious and intentional killing of the decedent. If the court determines under that standard that the person would be found criminally accountable for the felonious and intentional killing of the decedent, **the determination conclusively establishes that person as the decedent's killer for purposes of this section**.

ARIZ. REV. STAT. ANN. § 14-2803(F) (emphasis added). Whether P.J. Mizioch bears responsibility for the Decedent's death has yet to be determined. However, if this Court determines that he is responsible for purposes of A.R.S. § 14-2803, Protective Life will be statutorily barred from dispersing death benefit proceeds to him. If, on the other hand, the Court determines he is not responsible for the Decedent's murder, then P.J. Mizioch is entitled to the life insurance proceeds.

In the context of Arizona's slayer statute, the ongoing challenges to P.J. Mizioch's role as personal representative under the Decedent's Will and as primary beneficiary under the Decedent's insurance policy provide Protective Life with sufficient notice that a question exists as to P.J. Mizioch's status as proper payee of the policy's death benefit proceeds. Therefore, since P.J. Mizioch's guilt or innocence regarding the Decedent's murder under the standards set forth in A.R.S. § 14-2803(F) is in question, although not yet determined, Protective Life's reluctance to disperse the death benefit proceeds from the Decedent's insurance policy to P.J. Mizioch is prudent.

### 2. Written Notice Requirement under A.R.S. § 14-2803(G) and (H).

P.J. Mizioch argues that, because M.C. Montoya's and R.L. Montoya's claims to the death benefit proceeds fail to satisfy the written notice requirement spelled out in

A.R.S. § 14-2803(H),[1] his is the only claim to the proceeds Protective Life may acknowledge; thus, competing claims do not exist.

Consideration of this argument requires an examination of the statute's written notice requirement. Under Arizona case law, proper statutory interpretation attributes plain meaning to statutory language. *Bilke v. State*, 206 Ariz. 462, 464 (2003) (holding that in determining the legislature's intent, courts initially look to the language of the statute itself. If the language is clear, the court must "apply it without resorting to other methods of statutory interpretation."). Regarding the written notice requirement and its application to third party payor liability, the statute provides,

> **A payor or other third party** is not liable for having made a payment or transferred an item of property or any other benefit to a beneficiary designated in a governing instrument affected by an intentional and felonious killing or for having taken any other action in good faith reliance on the validity of the governing instrument on request and satisfactory proof of the decedent's death and before the payor or other third party received written notice of a claimed forfeiture or revocation under this section. **Any payor or other third party** is liable for a payment made or any other action taken after the payor or other third party received written notice of a claimed forfeiture or revocation under this section.

ARIZ.REV. STAT. ANN. § 14-2803(G) (emphasis added). On its face, the statute merely relieves a third party payor from liability if it pays out proceeds before receiving written notice of a claimed forfeiture or revocation. The statute does not provide that an insurance company cannot withhold proceeds unless it receives written notice of a claimed forfeiture or revocation. Pursuant to the statute's plain meaning, an insurance company that pays out a benefit to one party is not liable when an *unknown* party later makes a claim.

P.J. Mizioch lacks standing to dispute the notice requirement, as A.R.S. § 14-2803(G) protects third party payors, not beneficiaries. While Protective Life may have

---

[1] "Written notice of a claimed forfeiture or revocation under subsection G must be mailed to the payor's or other third party's main office or home by certified mail, return receipt requested, or served on the payor or other third party in the same manner as a summons in a civil action." ARIZ. REV. STAT. ANN. § 14-2803(H).

- 7 -

relied on P.J. Mizioch's argument to defend itself in the event that it paid benefits to Mizioch and was later confronted with competing claims, lack of proper notice does not require the insurance company to pay out the proceeds to Mizioch. In its own Complaint, Protective Life admits to having *actual knowledge* of M.C. and R.L. Montoya's competing, adverse claim. (Doc. 1 at pp.3-5; *see also* Doc. 31 at pp.3-4). Protective Life therefore requests relief from subsequent liability it faces with any action it takes regarding the respective claimants. Because Protective Life does not seek protection behind the written notice requirement, this Court need not consider whether the requirement is satisfied.

The Court finds that P.J. Mizioch's currently undetermined culpability under Arizona's slayer statute, which has led to adverse and competing claims to the insurance policy's death benefit proceeds, creates potential multiple liability for Protective Life. Therefore, it is appropriate for Protective Life to deposit the disputed funds with the Court. Accordingly, the Court grants Protective Life's Motion to Deposit Funds with the Court.

**IV.   MOTION TO REMAND TO STATE COURT.**

M.C. Montoya and R.L. Montoya filed a Petition for Remand requesting that this case be remanded to state court. (Doc. 60).

*A. Legal Standard.*

This Court has jurisdiction in this matter due to the diversity of citizenship between the parties and the amount in controversy.[2] 28 U.S.C. § 1332(a)(1), (b), and (c)(1). The United States Supreme Court has long held that diversity jurisdiction is premised upon the diversity of the parties *at the time the action is brought*. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004).

---

[2] Protective Life is a Tennessee corporation and all Interpleader Defendants are citizens of Arizona. The dispute involves death benefit proceeds in the amount of $1,000,000.

- 8 -

***B. Analysis and Conclusion.***

M.C. Montoya and R.L. Montoya base their Petition for Remand on the possibility (now borne out) of Protective Life ceasing to be a party to this action. (Doc. 60 at p.3). They point out that Protective Life's departure from the case at bar leaves behind two non-diverse litigants and five state law claims. (*Id.*). Therefore, pursuant to 28 U.S.C. § 1367(c), M.C. Montoya and R.L. Montoya request that the Court decline to exercise Supplemental Jurisdiction. (*Id.* at p.4). As stated above, Diversity Jurisdiction establishes at the time an action is brought and the Court is not divested of jurisdiction thereafter based on the comings and goings of parties. *Grupo Dataflux*, 541 U.S. at 570-71. There are, however, statutory reasons why a federal district court may decline to exercise its Supplemental Jurisdiction. 28 U.S.C. § 1337(c). M.C. and R.L. Montoya rely on three of these factors: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; and (3) the district court has dismissed all claims over which it has original jurisdiction. (Doc. 60 at p.4).

M.C. and R.L. Montoya may not credibly claim, nor do they, that the five issues at bar raise a "novel or complex issue of State law." (*See generally,* Doc. 60). Furthermore, this case never involved questions arising under federal law; jurisdiction was based solely on the diversity of parties and the amount in controversy. Therefore, federal claims never predominated over state claims and the second factor is not applicable here. Lastly, because diversity jurisdiction establishes at the time the action is brought, and original jurisdiction in this matter is based on diversity and amount in controversy - opposed to particular *claims* - the third factor is also not at issue here.

This Court has jurisdiction over this matter. As stated above, once established, the Court continues to have jurisdiction. Absent a compelling reason, as set out in 28 U.S.C. § 1367(c), remand is not warranted. The Court will not exercise its discretion to remand this case to state court. Therefore, the Court denies the Motion for Remand.

- 9 -

Accordingly,

**IT IS ORDERED** that Plaintiff Protective Life's Motion for Default Judgment as to Interpleader Defendant J.R. Montoya (Doc. 49) is GRANTED. The Clerk shall enter declarative judgment against Jimmy Ray Montoya that he shall not be entitled to any of the life insurance proceeds from Protective Life Policy No. PL0675396 on the life of Phyllis Mizioch.

**IT IS FURTHER ORDERED** that Plaintiff Protective Life's Motion to Deposit Funds With the Court (Doc. 31) is GRANTED. Protective Life shall file a proposed order to deposit the funds and for its discharge within ten (10) days of the date of this Order.

**IT IS FINALLY ORDERED** that Interpleader Defendants M.C. Montoya's and R.L. Montoya's Motion to Remand to State Court (Doc. 60) is DENIED.

DATED this 10th day of February, 2011.

_____
James A. Teilborg
United States District Judge