**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Protective Life Insurance Company, a Tennessee Corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>Peter Mizioch, an Arizona resident; The Estate of Phyllis A. Mizioch; Jimmy Ray Montoya, an Arizona resident; Mark Casey Montoya, an Arizona resident; Russell Lynn Montoya, an Arizona resident,<br><br>          Defendants.<br>_____<br>Peter Mizioch, an Arizona resident,<br><br>          Cross-Claimant,<br><br>vs.<br><br>Jimmy Ray Montoya, an Arizona resident; Mark Casey Montoya, an Arizona resident; Russell Lynn Montoya, an Arizona resident,<br><br>          Cross-Defendants.<br>_____<br>Mark Casey Montoya, an Arizona resident; Russell Lynn Montoya, an Arizona resident,<br>          Cross-Claimants,<br><br>vs.<br>Peter Mizioch, an Arizona resident,<br><br>          Cross-Defendant. | No. 2:10-CV-01728-PHX-JAT (Lead)<br>No. 2:10-CV-02341-PHX-ROS (Cons)<br><br>**ORDER** |

The Court currently has several motions pending in this case and now rules on the following: Mr. Mizioch's Motion to Dismiss Mark and Russell Montoyas' Cross-Claim (Doc. 69); the Montoyas' Rule 56(d) Motion (Doc. 96); the Montoyas' Motion for Summary Judgment (Doc. 70); Mr. Mizioch's Motion in Limine (Doc. 81); Mr. Mizioch's Motion for Partial Judgment on the Pleadings or Alternatively Motion for Partial Summary Judgment (Doc. 82); the Montoyas' Motion to Strike Mr. Mizioch's Motion for Partial Summary Judgment (Doc. 106); the Montoyas' Motion to Strike the Declaration of James F. Bieleniewicz (Doc. 182); AXA Equitable Life Insurance Company's Motion for Default Judgment as to Jimmy Ray Montoya (Doc. 141); and the parties' Stipulation re Deposit of Disputed Funds and Dismissal of AXA Equitable Insurance Company (Doc. 147).

## **BACKGROUND**

Peter Mizioch married Phyllis Mizioch for the first time in October of 1995. They divorced in July of 1997, but remarried in March of 2005. On December 28, 1999, Mr. Mizioch applied for a life insurance policy with Protective Life Insurance Company ("Protective Life") for the life of Phyllis Mizioch.[1] That same day, Protective Life issued policy #PL0675396 (the "Protective Life Policy") on the life of Phyllis Mizioch with a death benefit of $1,000,000. Mr. Mizioch is the primary beneficiary of the Protective Life Policy; Phyllis Mizioch's Estate is the contingent beneficiary.

On September 20, 2007, Mr. Mizioch applied for a life insurance policy with AXA Equitable Life Insurance Company ("AXA") for the life of his wife Phyllis Mizioch. On December 1, 2007, AXA issued policy #J 107 024 229 (the "AXA Policy") on the life of Mrs. Mizioch with a death benefit of $3,500,000. Mr. Mizioch is the primary beneficiary of the AXA Policy; Mrs. Mizioch's Estate is the contingent beneficiary.

Peter and Phyllis Mizioch were separated in the summer of 2010 and were contemplating

---

[1] Although the application for the Protective Life Policy indicated that Phyllis Mizioch was Peter Mizioch's wife, the two actually were not married in December of 1999.

filing for divorce. Peter, Phyllis, Peter's daughter from another marriage, Marilyn Ortega, and Edward Maciag, Mr. Mizioch's long-time business associate, all met at Phyllis's North Central Phoenix home around 4:00 p.m. on July 6, 2010 to discuss the impending divorce and inventory property. The meeting lasted about thirty (30) minutes. Peter and Phyllis Mizioch disagreed about various issues relating to the distribution of property.

Phyllis Mizioch was murdered in the kitchen of her home some time later that evening. Dakota Guinn, a step-niece who was residing with Phyllis, discovered her body around 10:00 p.m. that night when Ms. Guinn returned home. Phyllis had three gunshot wounds to her head, neck, and upper torso.

On July 21, 2010, the Phoenix Police Department informed Protective Life that the Department considered Peter Mizioch a suspect in Phyllis's homicide. Pursuant to A.R.S. §14-2803 (Arizona's so-called "slayer statute"), a "person who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate," and the felonious killing revokes any revocable "disposition or appointment of property made by the decedent to the killer in a governing instrument . . ." A.R.S. §14-2803 (A) &(B)(1)(a). Protective Life therefore would not process the claim submitted to it by Peter Mizioch on July 19, 2010.

Both Protective Life and AXA filed interpleader complaints with the Court. Because competing claims to both Policies would prevail if Peter Mizioch is prohibited from recovering under the Policies pursuant to A.R.S. §14-2803B(1)(a), the insurance companies filed suit to have the Court resolve the slayer statute issues and determine the proper beneficiaries of the Policies. Protective Life and AXA named Peter Mizioch, the Estate of Phyllis A. Mizioch, and Jimmy, Mark, and Russell Montoya, Phyllis's sons from a prior relationship, as Defendants in the interpleader actions. The Court consolidated the AXA interpleader action, CV10-02341-PHX-ROS, with the Protective Life interpleader action on March 9, 2011 (Docs. 110 & 111).

In the Protective Life action, Peter Mizioch filed cross-claims against Protective Life and

Jimmy, Mark, and Russell Montoya. Mr. Mizioch alleged that Protective Life breached the insurance contract, acted in bad faith, and breached the covenant of good faith and fair dealing. He voluntarily dismissed all cross-claims against Protective Life on December 13, 2010 (Doc. 52). Mr. Mizioch alleged that Mark and Russell Montoya interfered with his contract with Protective Life, interfered with business expectancies, and aided and abetted tortious conduct.[2] Mr. Mizioch also filed a counter-claim for declaratory relief against Protective Life and Jimmy, Mark, and Russell Montoya. Mark and Russell Montoya filed cross-claims against Mr. Mizioch in the Protective Life case for wrongful death and intentional infliction of emotional distress. In the AXA action, Peter Mizioch cross-claimed against Mark and Russell Montoya for interference with contract and interference with business expectancies and against Jimmy, Mark, and Russell Montoya for declaratory relief.

The Court granted Protective Life's Motion to Deposit Funds (Doc. 31) on February 20, 2011. (Doc. 93.) The Court dismissed Protective Life as a party on March 14, 2011. (Doc. 116.) A stipulation regarding the AXA Policy's funds and dismissal of AXA is currently pending before the Court.

**MIZIOCH'S MOTION TO DISMISS MONTOYAS' CROSS-CLAIMS**

Mr. Mizioch moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Montoyas' cross-claims against him for failure to state a claim. Mr. Mizioch argues that the Montoyas have not alleged facts sufficient to state a claim for wrongful death or intentional infliction of emotional distress.

The Court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[2]Mr. Mizioch voluntarily dismissed the aiding and abetting cross-claim against Mark and Russell Montoya on December 13, 2010 (Doc. 52).

- 4 -

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In Arizona, a wrongful death claim is a statutory cause of action. Arizona statute provides:

> When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to murder in the first or second degree or manslaughter.

A.R.S. §12-611. Children may bring a claim for the wrongful death of a parent. A.R.S. §12-612(A). If Peter Mizioch caused the death of their mother, then the Montoyas could prevail on a wrongful death claim against him.

To prevail on a claim for intentional infliction of emotional distress a plaintiff must prove: 1) that the defendant's conduct was extreme and outrageous; 2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result; and 3) severe emotional distress occurs as a result of the defendant's conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005)(en banc). A plaintiff must demonstrate that the defendant's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (internal citations omitted). Murder or murder by hire certainly would qualify as extreme and outrageous behavior that could result

1 in extreme emotional distress for the victim's family.

Although the Court agrees with Mr. Mizioch that the Montoyas make a lot of allegations not relevant to their wrongful death or intentional infliction of emotional distress claims, the Court finds that the Montoyas have alleged facts sufficient to state a claim against Mr. Mizioch for both causes of action. The Montoyas allege that the Mizioch's were separated at the time of Phyllis Mizioch's murder; that on the day of the murder, Mr. Mizioch told Mark Montoya that Mrs. Mizioch would not get a "f!@#ing thing" in the divorce; that Mr. Mizioch was one of the last people to see Mrs. Mizioch alive; and that Mr. Mizioch stood to gain $4.5 million in life insurance proceeds upon the death of his estranged wife. These allegations are sufficient to state facially plausible claims for wrongful death and intentional infliction of emotional distress. The Court therefore denies Mr. Mizioch's Motion to Dismiss Mark and Russell Montoyas' Cross-Claims (Doc. 69).

In their Response to Mr. Mizioch's Motion to Dismiss Cross-Claim, the Montoyas filed a "Rule 56(d) Motion" as an alternative to granting the Motion to Dismiss. But Rule 56(d) applies in the context of motions for summary judgment, not motions to dismiss. Further, the 56(d) request is mooted by the Court's denial of the Motion to Dismiss. The Court therefore denies the Montoyas' Rule 56(d) request.

## **MONTOYAS' MOTION FOR SUMMARY JUDGMENT**

Mark and Russell Montoya moved for summary judgment on all of Peter Mizioch's cross-claims against them. (Doc. 70.) Peter and Phyllis Mizioch were not married at the time Peter applied for the Protective Life Insurance Policy, even though the application for the Policy indicated they were married. The Montoyas argue that this error in the application constituted insurance fraud and that they therefore are entitled to summary judgment on all of Mr. Mizioch's cross-claims against them – interference with contract, interference with business expectancies, and declaratory relief.

One of the elements of a fraud claim is intent to defraud. *Nielson v. Flashberg*, 419 P.2d 514, 519 (Ariz. 1966). Mr. Mizioch argues that his insurance agent, James Bieleniewicz,

filled out the Protective Life application for the Miziochs and, on a mistaken assumption, marked Phyllis Mizioch as Peter Mizioch's wife. Mr. Mizioch allegedly did not review the application before signing it. The Montoyas have not produced any evidence to refute that version of events. The Montoyas have not demonstrated as a matter of law that Peter Mizioch committed insurance fraud; material questions of fact exist.

Nor have the Montoyas cited any law to support their standing to make a fraudulent misrepresentation claim against Mr. Mizioch, when that claim ordinarily would belong to Protective Life. Further, the Montoyas cite no law in support of their contention that Mr. Mizioch's alleged misrepresentation on the application entitles them to judgment as a matter of law on all the cross-claims. In fact, the six-page motion cites to only two cases.

Because the Montoyas have not demonstrated as a matter of law that Mr. Mizioch committed fraud, the Court will deny their Motion for Summary Judgment. Mr. Mizioch included a motion in limine to prevent the Montoyas from raising fraud at the hearing in his Response to their Motion for Summary Judgment. Because the motion in limine is premature, the Court will deny it without prejudice to re-urging at the appropriate time.

### **MIZIOCH'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Mr. Mizioch has moved for partial judgment on the pleadings or, in the alternative, for partial summary judgment on his claim for declaratory relief against the Montoyas. Mr. Mizioch claims that, having made all annual premiums on the Protective Life Policy, he is the legal beneficiary of the Policy proceeds. He argues that disqualification under the Arizona slayer statute is the only reason he would not be entitled to the Policy proceeds and: 1) the Montoyas failed to petition the Court to make findings under the slayer statute as required by A.R.S. §14-2803(F) and 2) there is insufficient evidence as a matter of law to disqualify Mr. Mizioch under the slayer statute.

A.R.S. §14-2803(F) reads, in pertinent part: "In the absence of a conviction, the court, on petition of an interested person, shall determine whether, under the preponderance of the evidence standard, the person would be found criminally accountable for the felonious and

- 8 -

intentional killing of the decedent." A.R.S. §14-1201, which provides definitions for Title 14, defines petition as a "written request to the court for an order after notice." A.R.S. §14-1201(39). Mr. Mizioch argues that the Court should not even reach a disqualification determination under the slayer statute because the Montoyas have not filed an appropriate petition with the Court.

The Court finds that Protective Life and AXA qualify as A.R.S. §14-2803 "interested persons" for the purposes of this litigation.[3] The Court further finds that the interpleader complaints filed by the insurance companies satisfy A.R.S. §14-2803(F)'s requirement for a petition. If Protective Life and AXA do not qualify as interested persons, the Court finds that one or more of the Montoyas' pleadings in this case meet §14-2803(F)'s requirement for a petition.

As for Mr. Mizioch's second argument, the Court finds that the Montoyas have not presented evidence sufficient to create a material question of fact regarding Mr. Mizioch's responsibility for Phyllis Mizioch's murder. Local rules of procedure require a party opposing a motion for summary judgment to file a statement setting forth: "for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed . . ." L.R.Civ.P.56.1(b).

The Montoyas' controverting statement of facts filed with their Response to the alternative Motion for Partial Summary Judgment does not conform with this rule. They did

---

[3]A.R.S. §14-1201(26) reads: "'Interested person' includes any trustee, heir, devisee, child, spouse, creditor, beneficiary, person holding a power of appointment and other person who has a property right in or claim against a trust estate or the estate of a decedent, ward or protected person. Interested person also includes a person who has a priority for appointment as personal representative and other fiduciaries representing interested persons. Interested person, as the term relates to particular persons, may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding."

not specifically accept or controvert each of Mizioch's statement of facts in support of his Motion. The Montoyas' Response to Mizioch's State of Facts reads, "Mr. Mizioch's 'Statement of Facts' is fourteen (14) pages long and consists of seventy-two (72) separately numbered paragraphs which would take hours to respond to in connection with a Motion that is procedurally improper as it seeks the same relief as in the first Motion for Summary Judgment Mr. Mizioch filed twenty six (26) days before the Second Motion." (Doc. 107, p.3.) The Montoyas' entire Response memorandum consists of only four pages. The short shrift the Montoyas gave to Mr. Mizioch's Partial Motion for Summary Judgment seems to stem from their mistaken belief that the Motion is an impermissible second motion on the same issues.

In fact, the Montoyas moved to strike Mr. Mizioch's Partial Motion for Summary Judgment. They argued that the Motion was actually a second motion for summary judgment because Mizioch's earlier Motion to Dismiss raised matters outside the pleadings and therefore really was a motion for summary judgment. But the Court did not consider any matters outside the pleadings when ruling on the Motion to Dismiss; the Motion was not converted to a motion for summary judgment. Nor was the Partial Motion for Summary Judgment merely a repeat of the earlier Motion to Dismiss. The Court therefore will deny the Montoyas' Motion to Strike the Motion for Partial Judgment on the Pleadings/Partial Summary Judgment.

Because the Montoyas did not take the time to respond to Mr. Mizioch's Statement of Facts in Support of his Motion for Partial Summary Judgment, the Court will deem Mr. Mizioch's Statement of Material Facts admitted for purposes of the pending Motion. L.R.Civ.P. 56.1(b) & Fed.R.Civ.P. 56(e)(2); *see also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 845 F.2d 1538, 1545 (9th Cir. 1988)("We hold that when a local rule . . . has been promulgated, it serves as adequate notice to nonmoving parties that if a genuine issue exists for trial, they must identify that issue and support it with evidentiary materials . . .."); *Szaley v. Pima County*, 371 Fed.Appx. 734, 735 (9th Cir.

2010)("The district court permissibly deemed Defendant's statement of facts to be true because Plaintiff failed to comply with Local Rule 56.1(b)."). The Court therefore accepts Mr. Mizioch's time line of events for the day of Phyliss's murder, as well as his statement that he had nothing to do with her death.

The Montoyas offer nothing in response to Mr. Mizioch's version of events. They have not contradicted his statements and have not offered their own statements, backed by admissible evidence, demonstrating that Mr. Mizioch is responsible for his estranged wife's death. The Montoyas point to Mr. Mizioch's past receipt of insurance proceeds after the murder of persons on whom either he or a business associate/friend had life insurance, but have come forward with no facts tying Mr. Mizioch to the murder of Phyllis Mizioch. The Montoyas cannot defeat a motion for summary judgment by citing only past events. At this juncture, they have not met their burden of establishing that material disputes exist as to Mr. Mizioch's responsibility for *this* death.[4]

The Court therefore will grant Mr. Mizioch's Motion for Partial Judgment on the Pleadings or Alternatively Motion for Partial Summary Judgment (Doc. 82) as to his claim for Declaratory Relief. The Court finds that Mr. Mizioch is entitled to the proceeds from the Protective Life and AXA Policies. Mr. Mizioch shall file a proposed order instructing the Court how he would like the proceeds to be paid by the Clerk of the Court. The Court's ruling on Mr. Mizioch's Motion for Partial Summary Judgment obviates the need for an Arizona slayer statute hearing. The Court therefore vacates the hearing set for September 13, 2011.

**MOTION TO STRIKE BIELENIEWICZ DECLARATION**

The Montoyas filed a Motion to Strike the Declaration of James F. Bieleniewicz (Doc.

---

[4] The Court notes that its ruling on the Motion for Partial Summary Judgment is not inconsistent with its denial of Mr. Mizioch's Motion to Dismiss the Monotyas' Cross Claims because the Montoyas have a lesser burden at the pleading stage than at the summary judgment stage.

- 11 -

182) that Mr. Mizioch attached to his Response to the Montoyas' Motion for Summary Judgment. In the Declaration, Mr. Bieleniewicz states that he mistakenly believed that Peter and Phyllis Mizioch were married at the time Mr. Bieleniewicz filled out the Protective Life Application on their behalf. The Declaration explains that Mr. Bieleniewicz filled out the application that contained the mistake and that Mr. Mizioch signed it without reviewing the application.

The basis for the Montoyas' Motion to Strike the Declaration seems to be that Mr. Bieleniewicz's deposition testimony somewhat differs from the statements in his Declaration. The Court finds, however, that Mr. Bieleniewicz's deposition testimony does not contradict his Declaration. The Montoyas have not asserted a valid basis for striking the Declaration, and the Declaration meets the requirements of Federal Rule of Civil Procedure 56(c)(4). The Court therefore will deny the Montoyas' Motion to Strike.

### **MOTION FOR DEFAULT JUDGMENT AGAINST JIMMY MONTOYA**

AXA has filed a Motion for Default Judgment as to Jimmy Ray Montoya (Doc. 141), a son of Phyllis that has not participated in the litigation. AXA filed its Complaint in Interpleader on October 29, 2010. (CV10-02341-PHX-ROS, Doc. 1.) Jimmy Montoya's executed Waiver of Service was filed with the Court on December 1, 2010. (CV10-02341-PHX-ROS, Doc. 8.) Jimmy Montoya has failed to answer the Complaint or otherwise respond.

AXA filed an Application for Entry of Default against Jimmy Ray Montoya on March 11, 2011. (Doc. 114.) The Clerk entered default against Jimmy Montoya on March 14, 2011. (Doc. 115.) Mr. Montoya has not moved for relief from the Entry of Default. The Court therefore will grant AXA's Motion for Default Judgment against Jimmy Ray Montoya. Jimmy Ray Montoya is precluded from asserting any interest in the death benefits of the AXA Policy.

**STIPULATION RE DEPOSIT OF FUNDS AND DISMISSAL OF AXA**

AXA, Mr. Mizioch, the Estate of Phyllis Mizioch, and Mark and Russell Montoya have stipulated to allow AXA to deposit the $3,500,000 proceeds from the AXA Policy with the Clerk of the Court and be dismissed from the case. The Court will grant the parties' Stipulation and allow AXA to deposit the funds with the Clerk of the Court and will relieve AXA from any further obligation or liability for the funds.

Accordingly,

**IT IS ORDERED** DENYING Mr. Mizioch's Motion to Dismiss Mark and Russell Montoyas' Cross-Claim (Doc. 69).

**IT IS FURTHER ORDERED** DENYING the Montoyas' Rule 56(d) Motion (Doc. 96).

**IT IS FURTHER ORDERED** DENYING the Montoyas' Motion for Summary Judgment (Doc. 70).

**IT IS FURTHER ORDERED** DENYING without prejudice Mr. Mizioch's Motion in Limine (Doc. 81).

**IT IS FURTHER ORDERED** Granting Mr. Mizioch's Motion for Partial Judgment on the Pleadings or Alternatively Motion for Partial Summary Judgment (Doc. 82). The Court grants summary judgment to Mr. Mizioch on his Cross Claim for Declarative Relief. Mr. Mizioch shall file a proposed order within ten (10) days of the date of this Order providing instructions for the Clerk's payment of the Policies' proceeds.

**IT IS FURTHER ORDERED** Vacating the Arizona slayer statute hearing currently set for September 13, 2011.

**IT IS FURTHER ORDERED** DENYING the Montoyas' Motion to Strike Mr. Mizioch's Motion for Partial Summary Judgment (Doc. 106).

**IT IS FURTHER ORDERED** DENYING the Montoyas' Motion to Strike the Declaration of James F. Bieleniewicz (Doc. 182).

**IT IS FURTHER ORDERED** GRANTING AXA Equitable Life Insurance Company's Motion for Default Judgment as to Jimmy Ray Montoya (Doc. 141). The Clerk shall enter

declarative judgment against Jimmy Ray Montoya that he shall not be entitled to any of the life insurance proceeds from AXA Equitable Life Insurance Company Life Policy #J 107 024 229 on the life of Phyllis Mizioch.

**IT IS FURTHER ORDERED** GRANTING the parties' Stipulation re Deposit of Disputed Funds and Dismissal of AXA Equitable Life Insurance Company (Doc. 147). AXA shall be permitted to deposit with the Clerk of the Court the death benefit proceeds due under AXA's Policy #J 107 024 229 in the principal amount of $3,500,000.

**IT IS FURTHER ORDERED** that, upon depositing the death benefit proceeds due under the AXA Policy with the Clerk of the Court and providing notice to the Court and all parties of such deposit, AXA Equitable Life Insurance Company shall be deemed dismissed from this action and discharged from any further obligation and liability to any of the Defendants with respect to the death benefit proceeds due under the AXA Policy.

DATED this 1st day of August, 2011.

James A. Teilborg
United States District Judge