1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Protective Life Insurance Company, a Tennessee Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Peter Mizioch, an Arizona resident; The Estate of Phyllis A. Mizioch; Jimmy Ray Montoya, an Arizona resident; Mark Casey Montoya, an Arizona resident; Russell Lynn Montoya, an Arizona resident,<br><br>    Defendants.<br><br>Peter Mizioch, an Arizona resident,<br><br>    Cross-Claimant,<br><br>vs.<br><br>Jimmy Ray Montoya, an Arizona resident; Mark Casey Montoya, an Arizona resident; Russell Lynn Montoya, an Arizona resident,<br><br>    Cross-Defendants.<br><br>Mark Casey Montoya, an Arizona resident; Russell Lynn Montoya, an Arizona resident,<br><br>    Cross-Claimants,<br><br>vs.<br><br>Peter Mizioch, an Arizona resident, | No. 2:10-CV-01728-PHX-JAT (Lead)<br>No. 2:10-CV-02341-PHX-ROS (Cons)<br><br>**ORDER** |

| | |
|---|---|
| Cross-Defendant. | )<br>) |
| AXA Equitable Life Insurance Company, a New York Stock Company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| Peter Mizioch, an Arizona resident; The Estate of Phyllis A. Mizioch; Jimmy Ray Montoya, an Arizona resident; Mark Casey Montoya, an Arizona resident; Russell Lynn Montoya, an Arizona resident, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| Peter Mizioch, an Arizona resident, | ) |
| Cross-Claimant, | )<br>) |
| vs. | )<br>) |
| Jimmy Ray Montoya, an Arizona resident; Mark Casey Montoya, an Arizona resident; Russell Lynn Montoya, an Arizona resident, | )<br>)<br>)<br>) |
| Cross-Defendants. | ) |

Pending before the Court is Defendant and Cross-Claimant Peter Mizioch's Motion for Attorneys' Fees. (Doc. 223.) Mr. Mizioch seeks $126,057.29 in attorneys' fees pursuant to A.R.S. §12-341.01(A).

**I.     BACKGROUND**

Peter Mizioch married Phyllis Mizioch for the first time in October of 1995. They divorced in July of 1997, but remarried in March of 2005. On December 28, 1999, Mr. Mizioch applied for a life insurance policy with Protective Life Insurance Company ("Protective Life") for the life of Phyllis Mizioch.[1] That same day, Protective Life issued

---

[1] Although the application for the Protective Life Policy indicated that Phyllis Mizioch was Peter Mizioch's wife, the two actually were not married in December of 1999.

policy #PL0675396 (the "Protective Life Policy") on the life of Phyllis Mizioch with a death benefit of $1,000,000. Mr. Mizioch is the primary beneficiary of the Protective Life Policy; Phyllis Mizioch's Estate is the contingent beneficiary.

On September 20, 2007, Mr. Mizioch applied for a life insurance policy with AXA Equitable Life Insurance Company ("AXA") for the life of his wife Phyllis Mizioch. On December 1, 2007, AXA issued policy #J 107 024 229 (the "AXA Policy")[2] on the life of Mrs. Mizioch with a death benefit of $3,500,000. Mr. Mizioch is the primary beneficiary of the AXA Policy; Mrs. Mizioch's Estate is the contingent beneficiary.

Peter and Phyllis Mizioch were separated in the summer of 2010 and were contemplating filing for divorce. Peter, Phyllis, Peter's daughter from another marriage, Marilyn Ortega, and Edward Maciag, Mr. Mizioch's long-time business associate, all met at Phyllis's North Central Phoenix home around 4:00 p.m. on July 6, 2010 to discuss the impending divorce and inventory property. The meeting lasted about thirty minutes. Peter and Phyllis Mizioch disagreed about various issues relating to the distribution of property.

Phyllis Mizioch was murdered in the kitchen of her home some time later that evening. Dakota Guinn, a step-niece who was residing with Phyllis, discovered her body around 10:00 p.m. on July 6th when Ms. Guinn returned home. Phyllis had three gunshot wounds to her head, neck, and upper torso.

On July 21, 2010, the Phoenix Police Department informed Protective Life that the Department considered Peter Mizioch a suspect in Phyllis's homicide. Pursuant to A.R.S. §14-2803 (Arizona's so-called "slayer statute"), a "person who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate," and the felonious killing revokes any revocable "disposition or appointment of

---

[2]The Court refers to the Protective Life Policy and the AXA Policy collectively as the "Policies."

- 3 -

1 property made by the decedent to the killer in a governing instrument . . ." A.R.S. §14-2803
2 (A) &(B)(1)(a). Protective Life therefore would not process the claim submitted to it by
3 Peter Mizioch on July 19, 2010.

4 Both Protective Life and AXA filed interpleader complaints with the Court. Because
5 competing claims to both Policies would prevail if Peter Mizioch were prohibited from
6 recovering under the Policies pursuant to A.R.S. §14-2803B(1)(a), the insurance companies
7 filed suit to have the Court resolve the slayer statute issues and determine the proper
8 beneficiaries of the Policies. Protective Life and AXA named Peter Mizioch, the Estate of
9 Phyllis A. Mizioch, and Jimmy, Mark, and Russell Montoya, Phyllis's sons from a prior
10 relationship, as Defendants in the interpleader actions. The Court consolidated the AXA
11 interpleader action, CV10-02341-PHX-ROS, with the Protective Life interpleader action on
12 March 9, 2011 (Docs. 110 & 111).

13 In the Protective Life action, Peter Mizioch filed cross-claims against Protective Life
14 and Jimmy, Mark, and Russell Montoya. Mr. Mizioch alleged that Protective Life breached
15 the insurance contract, acted in bad faith, and breached the covenant of good faith and fair
16 dealing. He voluntarily dismissed all cross-claims against Protective Life on December 13,
17 2010 (Doc. 52). Mr. Mizioch alleged that Mark and Russell Montoya interfered with his
18 contract with Protective Life, interfered with business expectancies, and aided and abetted
19 tortious conduct.[3] Mr. Mizioch also filed a counter-claim for declaratory relief against
20 Protective Life and Jimmy, Mark, and Russell Montoya.

21 Mark and Russell Montoya filed cross-claims against Mr. Mizioch in the Protective
22 Life case for wrongful death and intentional infliction of emotional distress. In the AXA
23 action, Peter Mizioch cross-claimed against Mark and Russell Montoya for interference with
24 contract and interference with business expectancies and against Jimmy, Mark, and Russell

---

[3]Mr. Mizioch voluntarily dismissed the aiding and abetting cross-claim against Mark and Russell Montoya on December 13, 2010 (Doc. 52).

- 4 -

1  Montoya for declaratory relief.

2  In his claims for declaratory relief against the Montoyas, Mr. Mizioch alleges that, having made all annual premiums on the Policies, he is the legal beneficiary of their proceeds. He argues that disqualification under the Arizona slayer statute is the only reason he would not be entitled to the Policies' proceeds and: 1) the Montoyas failed to petition the Court to make findings under the slayer statute as required by A.R.S. §14-2803(F) and 2) there is insufficient evidence as a matter of law to disqualify Mr. Mizioch under the slayer statute.

On August 1, 2011, the Court granted Mr. Mizioch's Motion for Partial Summary Judgment (Doc. 82) as to his claims for Declaratory Relief. (Doc. 210.) Because the Montoyas did not properly respond to Mr. Mizioch's Statement of Facts in Support of his Motion for Partial Summary Judgment, the Court deemed his Statement of Material Facts admitted for purposes of the Motion for Partial Summary Judgment. The Court therefore accepted Mr. Mizioch's time line of events for the day of Phyllis's murder, as well as his statement that he had nothing to do with her death. The Court consequently found that for the purposes of the Motion for Partial Summary Judgment on claims for Declaratory Relief, the Montoyas had not met their burden of demonstrating an issue of material fact existed regarding Mr. Mizioch's responsibility for Phyllis's death. The Court therefore granted partial summary judgment to Mr. Mizioch and vacated the Arizona slayer statute hearing. Mr. Mizioch now seeks an award of fees for the time spent on the Arizona slayer statute issues.

**II.     STANDARD OF REVIEW**

Under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(a). If the Court finds a party successful, then the Court must determine whether awarding fees to the successful party is appropriate. Finally, the Court must determine if the amount of fees sought is reasonable.

The trial court has discretion when determining whether to award attorneys' fees. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1183 (Ariz. 1985). The court in Warner provides six factors that courts should consider when determining whether it is appropriate to award attorneys' fees. *Id.* at 1184. These factors include: (1) considering the merits of the unsuccessful party's claim or defense; (2) considering whether the case could have been settled and whether the unsuccessful party's efforts were superfluous in that effort; (3) considering whether assessing fees against the unsuccessful party would create extreme hardship; (4) considering whether the successful party obtained all the relief sought; (5) considering the novelty of the legal question presented and whether the claim or defense has previously been adjudicated; and (6) considering whether the award of attorneys' fees would discourage other parties with valid claims or defenses from litigating legitimate contract issues because those parties would be afraid of incurring liability for a large amount of attorneys' fees. *Id.*

### III.   ANALYSIS AND CONCLUSION

The Court granted partial summary judgment to Mr. Mizioch on his claims for declaratory relief that the Arizona slayer statute does not disqualify him from receiving the Policies' proceeds. Finding no just reason for delay, the Court entered judgment on those claims. Mr. Mizioch now seeks an award of attorneys' fees for the time his counsel spent on those claims.

Before reaching whether it is appropriate to award fees on Mr. Mizioch's claims for declaratory relief, the Court must determine whether the claims for declaratory relief arise out of contract. A.R.S. §12-341.01(A) entitles successful parties to an award of attorneys' fees only if the case arises out of contract.

Mr. Mizioch argues his claims for declaratory relief regarding the Arizona slayer statute arise out of contract because the claims concern the proper recipient of the Policies' proceeds and because the Montoyas would not have standing to protest Mr. Mizioch's right to the proceeds unless they were contingent beneficiaries of the Policies. Mr. Mizioch argues

1  his declaratory relief claims arise out of contract despite the statutory nature of those claims.

2  If a contract is merely "somewhere within the factual background" of a case, an award
3  of fees under A.R.S. §12-341.01(A) is not proper. *In re: Larry's Apartment L.L.C.*, 249 F.3d
4  832, 836 (9th Cir. 2001). But if the contract at issue is central to the issues of the case, it can
5  serve as basis for a fee award. *Id.* at 836-37.

6  Determining whether an action arises out of contract can be difficult if questions of
7  contract are mixed with other questions, such as statutory interpretation. *A.H. v. Arizona*
8  *Prop. and Cas. Ins. Guar. Fund*, 950 P.2d 1147, 1150 (Ariz. 1997)(en banc). The Court's
9  analysis of whether an action is sufficiently contractual must focus on the substance of the
10 action. *Id.* If the claim arises "from statutory rather than contractual obligations, the
11 'peripheral involvement of a contract does not require the application of §12-341.01(A).'"
12 *Id.* (quoting *O'Keefe v. Grenke*, 825 P.2d 985, 997-98 (Ariz. Ct. App. 1992)).

13 To justify fees under §12-341.01(A), claims that do not sound directly in contract
14 must be so "'intrinsically related' to an asserted claim for breach or contract as to 'not exist
15 but for the breach of contract.'" *Bldg. Innovation Indus., L.L.C. v. Onken*, 473 F.Supp.2d
16 978, 988 (D. Ariz. 2007)(quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127,
17 1141-42 (Ariz. 1982)). The mere existence of a contract somewhere in a transaction will not
18 support the awarding of fees on a claim that does not itself allege the breach or invalidity of
19 a contract. *Id.* (quoting *A.H.*, 950 P.2d at 1150). If a contract is merely a factual predicate
20 to the action, but not the essential basis of it, an award of fees is not warranted. *Cashway*
21 *Concrete & Materials v. Sanner Contracting Co.*, 761 P.2d 155, 157 (Ariz. Ct. App. 1988).

22 In *Cashway*, the provider of concrete to a subcontractor foreclosed on a materialman's
23 lien when the subcontractor failed to pay. *Id.* at 156. The concrete provider and the
24 subcontractor had an oral contract regarding the unit price of the concrete. *Id.* On appeal,
25 the Arizona court determined that the concrete provider's action against those charged with
26 the lien did not arise out of contact and the provider therefore was not entitled to an award
27 of attorneys' fees pursuant to §12-341.01(A). *Id.* at 157. The *Cashway* court found that even

28
- 7 -

though breach of the contract between the lien holder and the subcontractor was a factual predicate to the action, it was not the essential basis for the case. *Id*. "Both issues litigated in this case, the validity of the lien and the reasonable value of the material provided, are wholly separate from the contract. They relate to a statutory remedy . . . . That remedy stands apart from the contract remedy."

Similarly, in *Kennedy v. Linda Brock Automotive Plaza, Inc.*, the Arizona Court of Appeals found that a lessee's Lemon Law suit against his lessor did not arise out of contract. 856 P.2d 1201, 1203-04 (Ariz. Ct. App. 1993). The plaintiff in *Kennedy* leased a defective BMW that the manufacturer could never satisfactorily fix, so the plaintiff sued the lessor and the manufacturer. *Id*. at 1202. The trial court granted judgment on the pleadings to the lessor and awarded the lessor its attorneys' fees. *Id*.

The Arizona appellate court noted that if a cause of action is purely statutory, then §12-341.01(A) does not apply. *Id*. at 1203. The court found that even though breach of the BMW lease was a factual predicate to the statutory Lemon Law suit, it was not the essential basis of the action, which was statutory in nature. *Id*. The court therefore held that the plaintiff's action did not arise out of the lease contract and that the trial court erred in awarding attorneys' fees to the lessor pursuant to §12-341.01(A).

The Court finds that the claims at issue here are similar to the claims in *Cashway* and *Kennedy*. Although Mr. Mizioch would not have had claims for declaratory relief unless the insurance agreements existed, his claims did not involve the validity or breach of the Policies or coverage under the Policies. The claims for declaratory relief instead called for a determination of whether a statute would disqualify Mr. Mizioch from receiving benefits under valid and enforceable Policies.

The Court's decision regarding the Arizona slayer statute and Mr. Mizioch's alleged responsibility for the death of his estranged wife was wholly separate from the Policies themselves. The Court did not have to consult the Policies at all to make its determination. The Policies were mere factual predicates to Mr. Mizioch's claims for declaratory relief, not

- 8 -

1  the essential bases for those claims. Rather, the declaratory relief claims dealt with a
2  statutory scheme designed to prevent a person from benefitting from the death of another if
3  that person murdered the other.

4  Mr. Mizioch argues that *Carpenter v. Carpenter*, 722 P.2d 298 (Ariz. Ct. App. 1985),
5  *rev'd in part on other grounds*, *Carpenter v. Carpenter*, 722 P.2d 230 (Ariz. 1986)(en banc),
6  supports his contention that the declaratory relief claims arise from contract. In *Carpenter*,
7  the ex-wife of a decedent sued the decedent's wife at the time of his death and others for an
8  interest in the decedent's retirement fund and group life insurance policy proceeds. *Id*. at
9  299. The trial court awarded the former wife one half the value of the decedent's retirement
10 account as of the date of the divorce and all the proceeds of the life insurance policy because,
11 in the divorce property settlement, the decedent agreed to maintain the former spouse as the
12 beneficiary on his work life insurance or to obtain a policy in the same amount if for any
13 reason the insurance was terminated. *Id*. The trial court also awarded the former wife
14 attorneys' fees under §12-341.01(A). *Id*. at 299-300.

15 On appeal, the court affirmed the trial court's award of the life insurance proceeds,
16 but reversed the award of one-half of the retirement benefits. *Id*. at 300-303. The court
17 reversed the award of attorneys' fees because, after its decision on appeal, the former wife
18 was the successful party on only one claim. *Id*. at 304. But the appellate court found that the
19 former wife's claim for injunctive relief and imposition of a constructive trust on the life
20 insurance proceeds arose out of contract for purposes of §12-341.01(A) because that claim
21 could not have existed "but for []'s *breach* of the property settlement agreement relating to
22 the group life insurance policy." *Id*. (emphasis added).

23 Mr. Mizioch's declaratory relief claims against the Montoyas do not depend on the
24 breach of any agreement. So, *Carpenter* does not control the issue presented to this Court.
25 Because Mr. Mizioch's claims for declaratory relief regarding the Arizona slayer statute do
26 not involve the validity or breach of the Policies, the Court finds that the claims do not arise
27 out of contract. The Court therefore will not award attorneys' fees pursuant to A.R.S. §12-
28

- 9 -

341.01(A) on those claims.

Accordingly,

**IT IS ORDERED** Denying Mr. Mizioch's Motion for Attorneys' Fees (Doc. 223).

DATED this 12th day of March, 2012.

James A. Teilborg
United States District Judge

- 10 -