**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Protective Life Insurance Co. and AXA Equitable Life Insurance Co., <br><br> Plaintiffs, <br><br> v. <br><br> Peter J. Mizioch; Estate of Phyllis A. Mizioch; Jimmy Ray Montoya; Mark Casey Montoya; and Russell Lynn Montoya, <br><br> Defendants. | No. CV10-1728-PHX-JAT <br><br> **ORDER** |

Currently pending before the Court are: the Montoyas' Motion to Voluntarily Dismiss the Appeal (Doc. 277); the Montoyas' Renewed Motion for Relief from Judgment Pursuant to Rule 60(b)(2) (Doc. 281); Mizioch's Motion for Reconsideration (Doc. 282); Mizioch's Motion to Dismiss Counts 4 and 5 of Peter J. Mizioch's Crossclaim (Doc. 283); the Montoyas' Motion to Provide a Response to Motion for Reconsideration (Doc. 286); and Mizioch's Renewed Motion to Distribute Insurance Proceeds (Doc. 289). The Court now rules on the Motions.

**I.   BACKGROUND**

Peter Mizioch married Phyllis Mizioch for the first time in October of 1995. They divorced in July of 1997, but remarried in March of 2005. On December 28, 1999, Mr. Mizioch applied for a life insurance policy with Protective Life Insurance Company ("Protective Life") for the life of Phyllis Mizioch. That same day, Protective Life issued policy #PL0675396 (the "Protective Life Policy") on the life of Phyllis Mizioch with a

death benefit of $1,000,000.  Mr. Mizioch is the primary beneficiary of the Protective Life Policy; Phyllis Mizioch's Estate is the contingent beneficiary.

On September 20, 2007, Mr. Mizioch applied for a life insurance policy with AXA Equitable Life Insurance Company ("AXA") for the life of his wife Phyllis Mizioch.  On December 1, 2007, AXA issued policy #J 107 024 229 (the "AXA Policy") on the life of Mrs. Mizioch with a death benefit of $3,500,000.  Mr. Mizioch is the primary beneficiary of the AXA Policy; Mrs. Mizioch's Estate is the contingent beneficiary.

Peter and Phyllis Mizioch were separated in the summer of 2010 and were contemplating filing for divorce.  Peter, Phyllis, Peter's daughter from another marriage, Marilyn Ortega, and Edward Maciag, Mr. Mizioch's long-time business associate, all met at Phyllis's North Central Phoenix home around 4:00 p.m. on July 6, 2010 to discuss the impending divorce and inventory property.  The meeting lasted about thirty (30) minutes.  Peter and Phyllis Mizioch disagreed about various issues relating to the distribution of property.

Phyllis Mizioch was murdered in the kitchen of her home some time later that evening.  Dakota Guinn, a step-niece who was residing with Phyllis, discovered her body around 10:00 p.m. that night when Ms. Guinn returned home.  Phyllis had three gunshot wounds to her head, neck, and upper torso.

On July 21, 2010, the Phoenix Police Department informed Protective Life that the Department considered Peter Mizioch a suspect in Phyllis's homicide.  Pursuant to A.R.S. §14-2803 (Arizona's so-called "slayer statute"), a "person who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate," and the felonious killing revokes any revocable "disposition or appointment of property made by the decedent to the killer in a governing instrument . . ."  A.R.S. §14-2803 (A) &(B)(1)(a).  Protective Life therefore would not process the claim submitted to it by Peter Mizioch on July 19, 2010.

Both Protective Life and AXA filed interpleader complaints with the Court. Because competing claims to both Policies would prevail if Peter Mizioch is prohibited

from recovering under the Policies pursuant to A.R.S. §14-2803B(1)(a), the insurance companies filed suit to have the Court resolve the slayer statute issues and determine the proper beneficiaries of the Policies. Protective Life and AXA named Peter Mizioch, the Estate of Phyllis A. Mizioch, and Jimmy, Mark, and Russell Montoya, Phyllis's sons from a prior relationship, as Defendants in the interpleader actions. The Court consolidated the AXA interpleader action, CV10-02341-PHX-ROS, with the Protective Life interpleader action on March 9, 2011 (Docs. 110 & 111).

In the Protective Life action, Peter Mizioch filed cross-claims against Protective Life and Jimmy, Mark, and Russell Montoya. Mr. Mizioch alleged that Protective Life breached the insurance contract, acted in bad faith, and breached the covenant of good faith and fair dealing. He voluntarily dismissed all cross-claims against Protective Life on December 13, 2010 (Doc. 52).

Mr. Mizioch alleged that Mark and Russell Montoya interfered with his contract with Protective Life, interfered with business expectancies, and aided and abetted tortious conduct. Mr. Mizioch also filed a counter-claim for declaratory relief against Protective Life and Jimmy, Mark, and Russell Montoya. Mr. Mizioch stipulated to dismissal of the aiding and abetting cross-claim against the Montoyas. (Doc. 56.) Mark and Russell Montoya filed cross-claims against Mr. Mizioch in the Protective Life case for wrongful death and intentional infliction of emotional distress. In the AXA action, Peter Mizioch cross-claimed against Mark and Russell Montoya for interference with contract and interference with business expectancies and against Jimmy, Mark, and Russell Montoya for declaratory relief.

The Court granted Protective Life's Motion to Deposit Funds (Doc. 31) on February 20, 2011. (Doc. 93.) The Court dismissed Protective Life as a party on March 14, 2011. (Doc. 116.) On August 1, 2011, the Court granted the parties' Stipulation re Deposit of Disputed Funds and Dismissal of AXA Equitable Insurance Company (147), allowed AXA to deposit the policy proceeds with the Court, and dismissed AXA as a party. (Doc. 210.)

Also on August 1, 2011, in the same Order, the Court: denied Mizioch's Motion to Dismiss the Montoyas' Cross-Claim (Doc. 69); denied the Montoyas' Rule 56(d) Motion (Doc. 96); denied the Montoyas' Motion for Summary Judgment (Doc. 70); Granted Mizioch's Motion for Partial Judgment on the Pleadings or Alternatively Motion for Partial Summary Judgment (Doc. 82) on his crossclaims for declaratory relief regarding entitlement to the insurance proceeds; vacated the Arizona slayer statute hearing; and denied the Montoyas' Motions to Strike Mizioch's Motion for Partial Summary Judgment (Doc. 106) and the Declaration of James F. Bieleniewicz (Doc. 182). (Doc. 210.) Finding no just reason for delay, the Court directed the Clerk to enter judgment for Mizioch on his crossclaims for declaratory relief (Doc. 214), and the Clerk entered judgment for Mizioch on August 8, 2011 (Doc. 215).

The Montoyas filed a Motion for Reconsideration and Seeking Stay of the Court's Orders dated August 1 and August 8, 2011 (Doc. 216) on August 8, 2011. The Montoyas asked the Court, based on new evidence, to reconsider its Order granting partial summary judgment to Mizioch on his crossclaims for declaratory relief and awarding him the Policies' proceeds. (Doc. 216.) The Montoyas sought reinstatement of the Arizona slayer statute hearing. The Montoyas further requested that the Court stay execution of the August 8, 2011 Judgment for Mizioch. (Id.) The Court declined to vacate its earlier Order awarding partial summary judgment to Mizioch on his cross-claims for declaratory relief, but allowed the Montoyas to file further briefing, with legal support, regarding their Motion to Stay. (Doc. 219.)

The Montoyas filed their Notice of Appeal from the Court's August 8, 2011 Judgment in favor of Mizioch on September 6, 2011. (Doc. 229.) The Montoyas filed a Motion for Relief (Doc. 255) from that same Judgment on November 8, 2011. The Court denied their Motion for Relief from Judgment because the Notice of Appeal divested the Court of jurisdiction. (Doc. 267.)

The Montoyas filed a Motion for Indicative Ruling Pursuant to Rule 62.1 (Doc. 273) on May 17, 2012. In the Motion, the Montoyas sought a limited remand from their

appeal. The Court denied the Motion for Indicative Ruling on May 21, 2012. (Doc. 274.) The Court noted that it had exercised the option found in Rule 62.1(a)(3) to deny the Motion for Relief from Judgment for lack of jurisdiction.

On June 18, 2012, the Montoyas filed an unopposed, voluntary motion to dismiss their appeal from the Court's Rule 54(b) summary judgment to Mizioch on his crossclaim for declaratory relief. (Doc. 277.) The Ninth Circuit Court of Appeals, not the district court, grants motions to voluntarily dismiss appeals, which the Ninth Circuit did on July 31, 2012.[1] (Doc. 294.) Now that they have abandoned their appeal and this Court has jurisdiction, the Montoyas again seek relief from the Rule 54(b) judgment for Mizioch on his crossclaims for declaratory relief that Mizioch is entitled to the Policies' proceeds. The Montoyas argue that newly discovered evidence justifies relief from the judgment.

On June 21, 2012, the Court granted the Montoyas' Motion to Stay and denied Mizioch's Motion to Distribute Proceeds. (Doc. 278.) The Court granted the stay pursuant to Rule 62(h), which allows a court to stay enforcement of a final 54(b) judgment until the Court enters a later judgment or judgments. F.R.Civ.P. 62(h). The Court conditioned the stay on the Montoyas' filing a bond in the amount of $94,000 within thirty days of the June 21 Order. (Doc. 278, p.12.) The Montoyas never filed the bond.

Because the Court granted a stay pursuant to Rule 62(h), which applies when a judgment has been entered on less than all of the claims in a case, Mizioch filed a voluntary Motion to Dismiss Counts 4 and 5 of Peter J. Mizioch's Crossclaim on June 22, 2012. (Doc. 283.) Those crossclaims against the Montoyas for interference with contract and interference with business expectancies are the only claims remaining in the case. On July 2, 2012, the Montoyas filed a Notice of No Opposition to Motion to Dismiss Counts 4 and 5 of Defendant Mizioch's Crossclaim. (Doc. 285.)

When the Montoyas failed to file the required $94,000 bond, Mizioch filed a

---

[1] The Order from the Ninth Circuit Court of Appeals granting the voluntary motion to dismiss the appeal moots the motion to dismiss the appeal filed in this Court.

- 5 -

Renewed Motion to Distribute Insurance Proceeds on July 24, 2012. (Doc. 289.) In their response to that Renewed Motion, the Montoyas ask the Court to stay disbursement of the Policies' proceeds until it has ruled on their Renewed Motion for Relief from Judgment. (Doc. 290, p.5.)

## II.  MONTOYAS' RULE 60(b)(2) MOTION

On August 1, 2011, the Court granted Partial Summary Judgment to Mizioch on his crossclaim for declaratory relief, holding the Montoyas had not demonstrated a material factual dispute existed regarding Mizioch's responsibility for the murder of Phyllis Mizioch. (Doc. 210.) Finding no just reason for delay, pursuant to Rule 54(b), the Court directed the Clerk to enter judgment for Mizioch on his declaratory relief crossclaim. (Doc. 214.) The Montoyas again seek relief from that Judgment based on evidence discovered since the Court's August 1, 2011 Order.

Rule 60 allows the Court to relieve a party from a final judgment when the party presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) . . ." To prevail on their Rule 60(b)(2) Motion for Relief from Judgment based on new evidence, the Montoyas must show that the evidence: 1) existed at the time of the Judgment; (2) could not have been discovered through due diligence; and (3) is of such magnitude that production of it earlier likely would have changed the Court's ruling on the Motion for Partial Summary Judgment. *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990); *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987).

The Montoyas offer the following new evidence in support of their Renewed Motion for Relief from Judgment:

- The September 13, 2011 Declaration of Karen Bieleniewicz, stating that her brother, James Bieleniewicz, told her that because of a debt he owed to Peter Mizioch, Mr. Bieleniewicz helped Mr. Mizioch secure a life insurance policy on Ron Bianchi, who later was murdered. (Doc. 281-2.)
- The Declarations of Ronnie, Gary, and Monty Yocom, brothers of Phyllis

Mizioch, filed on September 1, 2011. (Doc. 225-1, -2, -4.) Ronnie stated that he remembered attending a dinner several years ago during which Ed Maciag told Peter Mizioch that he would kill for Mizioch. Ronnie also related a conversation with Jim Bieleniewicz, during which Jim said he was having a terrible day because his sister had told the undersigned and the police that Jim and Mizioch planned a death in 1999 in connection with an insurance policy. Monty stated that about a week before Phyllis's murder, Peter called him to say that he was worried about how much a divorce Phyllis would cost him. All the Yocoms stated their belief that Peter Mizioch was responsible for Phyllis's murder.

- The September 16, 2011 Declaration of Rudy Miller (Doc. 281-5), in which he states that Ron Bianchi told him he needed to borrow $750,000 to pay back some hard moneylenders that he feared might hurt him or his family if he did not repay them.

- The October 26, 2011 Declaration of George Campbell (Doc. 281-6), in which he states: employees of SW Services, Inc. told him that Peter Mizioch was the beneficiary of a key man policy on the life of Wayne Snodgrass, who was murdered; he heard Peter Mizioch saying at a lunch meeting after the murder of Ron Bianchi that anyone could get away with murder as long as no evidence was left behind; and in 1996 or 1997, he overhead Peter Mizioch saying he would kill his wife Phyllis if she did not return some expensive rings.

- The second deposition of Jim Bieleniewicz on October 14, 2011. (Doc. 281-7.) In that deposition, Jim Bieleniewicz invoked his Fifth Amendment rights when asked questions about whether he laundered money for Peter Mizioch and other questions regarding his business dealings with Mr. Mizioch. Mr. Bieleniewicz also testified that Mr. Mizioch at one time threatened to throw him out a window if Mr. Bieleniewicz did not repay his loan in full and on time.

With regard to the "new" evidence discussing Mr. Mizioch's alleged involvement in prior, unrelated crimes, the Court previously has held that such evidence does not

create a material issue regarding Mr. Mizioch's responsibility for the murder of Phyllis. (August 12, 2011 Order, Doc. 219, p.3, "Leaving aside hearsay issues, the fundamental problem with the newly discovered evidence is that it does not create a material issue regarding Mr. Mizioch's responsibility for the murder of Phyllis Mizioch.")  The Court again finds that Mr. Mizioch's alleged involvement in past and unrelated crimes — i.e., loan sharking, money laundering, and the murders of Wayne Snodgrass and Ron Bianchi — does not create an issue of material fact regarding his responsibility for the murder of Phyllis.

Nor does the Court find any of the other "new" evidence of such magnitude that production of it earlier likely would have changed the Court's ruling on the Motion for Partial Summary Judgment. *Jones*, 921 F.2d at 878; *Coastal Transfer Co.*, 833 F.2d at 211.  Mr. Mizioch's worries about what a divorce from Phyllis would cost him and alleged, overheard comments from 15 years ago that people can get away with murder and that he would kill Phyllis if she did not return some rings do not raise a material issue as to the murder of Phyllis in July of 2010, especially given Mr. Mizioch's statement of fact that he had nothing to do with Phyllis's murder, which the Court deemed admitted as true.

Moreover, even assuming the Court could draw a negative inference against Mr. Mizioch for Mr. Bieleniewicz's invocation of his Fifth Amendment rights during his second deposition,[2] Mr. Bieleniewicz invoked his rights when discussing his involvement in money laundering.  And Mr. Mizioch's alleged money laundering activities do not tend to prove that he had anything to do with the murder of Phyllis Mizioch.

Because the Court does not find any of the alleged new evidence of such magnitude that production of it earlier would have changed the Court's ruling on the Motion for Partial Summary Judgment, the Court will deny the Montoyas' Renewed

---

[2] The Montoyas cite to no authority for the proposition that a fact finder can draw a negative inference against someone else when a non-party witness chooses to invoke his own Fifth Amendment rights against self-incrimination.

- 8 -

Motion for Relief from Judgment.

### III. MIZIOCH'S MOTION TO DISMISS REMAINING CROSS-CLAIMS

Mizioch filed a voluntary Motion to Dismiss Counts 4 and 5 of Peter J. Mizioch's Crossclaim on June 22, 2012. (Doc. 283.) Those crossclaims against the Montoyas for interference with contract and interference with business expectancies are the only claims remaining in this case. Because the Montoyas do not object (Doc. 285, Notice of No Opposition), the Court will grant Mizioch's Motion to Dismiss Counts 4 and 5 of Peter J. Mizioch's Crossclaim (Doc. 283) and will dismiss those claims with prejudice, each party to pay its own attorneys' fees. This dismissal disposes of all remaining claims in the case.

### IV. MIZIOCH'S RENEWED MOTION TO DISTRIBUTE PROCEEDS

Mizioch filed a Renewed Motion to Distribute Insurance Proceeds on July 24, 2012 after the Montoyas failed to post the required bond. In their response to that Renewed Motion, the Montoyas asked the Court to stay disbursement of the Policies' proceeds until it has ruled on their Renewed Motion for Relief from Judgment. (Doc. 290, p.5.) Because the Court now has ruled on and denied the Montoyas' Renewed Motion for Relief from Judgment and the Montoyas offered no other basis for staying distribution of the insurance Policies' proceeds, the Court will grant Mizioch's Renewed Motion to Distribute Insurance Proceeds. (Doc. 289.)

Accordingly,

**IT IS ORDERED** DENYING as moot, given the Order of the Ninth Circuit of Appeals dismissing the appeal, the Montoyas' Motion to Voluntarily Dismiss the Appeal (Doc. 277).

**IT IS FURTHER ORDERED** DENYING the Montoyas' Renewed Motion for Relief from Judgment Pursuant to Rule 60(b)(2) (Doc. 281).

**IT IS FURTHER ORDERED** GRANTING Mizioch's voluntary Motion to Dismiss Counts 4 and 5 of Peter J. Mizioch's Crossclaim (Doc. 283). Those claims are dismissed with prejudice. This Order therefore disposes of all remaining claims in this

case and judgment shall enter accordingly.

**IT IS FURTHER ORDERED,** given the Court's ruling on the Motion to Dismiss Counterclaims and on the Renewed Motion to Distribute Insurance Proceeds, that Mizioch's Motion for Reconsideration (Doc. 282) and the Montoyas' Motion to Provide a Response to Motion for Reconsideration (Doc. 286) are denied as moot.

**IT IS FURTHER ORDERED** GRANTING Mizioch's Renewed Motion to Distribute Insurance Proceeds (Doc. 289).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall pay the $1,000,000 in insurance proceeds that was deposited with the Registry of the Court by Protective Life Insurance Company, plus interest accrued thereon, and the shall pay the $3,500,000 in insurance proceeds that was deposited with the Registry of the Court by AXA Equitable Life Insurance Company, plus interest accrued thereon, to Peter J. Mizioch.  The Clerk shall issue a check in the amount of $4,500,000, plus the interest accrued thereon, to the order of "Peter J. Mizioch."  The Clerk will contact John T. Gilbert, Esq., of Alvarez & Gilbert, PLLC, counsel for Peter Mizioch, when the check is ready to be retrieved.  The Clerk shall release the check to John T. Gilbert when he comes to the Clerk's office to collect it.

Dated this 27th day of August, 2012.

_____
James A. Teilborg
United States District Judge